```
                                        ┌─────────────────────────┐
                                        │ USDC SDNY               │
UNITED STATES DISTRICT COURT            │ DOCUMENT                │
SOUTHERN DISTRICT OF NEW YORK           │ ELECTRONICALLY FILED    │
                                        │ DOC #:_____  │
                                        │ DATE FILED: │ 3/31/22 │  │
                                        └─────────────────────────┘
```

```
┌─────────────────────────────────────────────┐
│ H DAYA INTERNATIONAL, CO., LTD.,             │
│                                              │
│                        Plaintiff,            │
│                                              │
│                - against -                   │
│                                              │
│ DO DENIM LLC, REWARD JEAN LLC, R.            │
│ SISKIND & COMPANY, INC., SALOMON             │
│ MURCIANO, VINTAGE APPAREL GROUP LLC,         │
│ RICHARD SISKIND, and ONLY BRANDS, INC.,      │
│                                              │
│                        Defendants.           │
│                                              │
└─────────────────────────────────────────────┘
```

**16 Civ. 8668 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff H. Daya International Co. Ltd. ("H. Daya") brings this action against two groups of defendants: (1) Do Denim LLC ("Do Denim"), Reward Jean LLC ("Reward," collectively with Do Denim, the "Judgment Debtors"), Only Brands, Inc. ("Only Brands"), and Salomon Murciano ("Murciano," collectively with the Judgment Debtors and Only Brands, "Murciano Defendants" or "Murciano Defs."); and (2) R. Siskind & Co., Inc. ("RSC"), Vintage Apparel Group LLC ("Vintage"), and Richard Siskind ("Siskind," and collectively with RSC and Vintage, the "Siskind Defendants" or "Siskind Defs."; and collectively with the Murciano Defendants, "Defendants"). (See "Second Amended Complaint" or "SAC," Dkt. No. 79.)

On June 29, 2012, prior to the commencement of this action, another court in this District entered a $1,157,012.23 judgment ("Judgment") against the Judgment Debtors. H. Daya filed this action against the Defendants to obtain payment on the Judgment and brings eight claims based on the business relationship among the Defendants. Counts One through Four allege claims for constructive fraudulent transfers among the Defendants, in violation of New York's Debtor and Creditor Law ("DCL") Sections 273, 273-a, 274, and 275. (See SAC ¶¶ 103-14.) Count Five alleges that these transfers were also actual fraudulent conveyances under DCL Section 276.[1] (See SAC ¶¶ 115-19.) Count Six alleges that the Judgment Debtors, RSC, and Vintage are jointly and severally liable for the Judgment under a de facto merger theory. (See SAC ¶¶ 120-21.) Relatedly, Count Seven alleges that the Judgment Debtors, RSC, and Vintage are jointly and severally liable for the Judgment under a joint venture theory. (See SAC ¶¶ 122-23.) And Count Eight is a hybrid claim that alleges RSC and Vintage were successors to the Judgment Debtors and

---

[1]   In 2019, the New York legislature repealed and replaced — effective April 4, 2020 — the provisions of the DCL under which H. Daya brings its fraudulent conveyance claims. See 2019 N.Y. Sess. Laws ch. 580. The prior provisions of the DCL are operative in this case because the new provisions do "not apply to a transfer made or obligation incurred before" the act's effective date, "nor shall [they] apply to a right of action that has accrued before [that] effective date." Id.; see Ray v. Ray, No. 20 Civ. 6720, 2021 WL 1164655, at *4 n.4 (S.D.N.Y. Mar. 25, 2021).

made fraudulent transfers to Murciano and Siskind individually. (<u>See</u> SAC ¶¶ 124-26.)

Pending before the Court are cross motions for summary judgment from the Siskind Defendants, the Murciano Defendants, and H. Daya. (<u>See</u> Dkt. Nos. 182, 191, 198.) For the reasons set forth below, H. Daya's motion for summary judgment is **DENIED**; the Siskind Defendants' motion for summary judgment is **DENIED** in part and **GRANTED** in part; and the Murciano Defendants' motion for summary judgment is **DENIED** in part and **GRANTED** in part.

## I.   BACKGROUND

A. <u>FACTS</u>[2]

RSC, Vintage, and the Judgment Debtors were organized in separate states with differing ownership structures. Do Denim

---

[2] Except as otherwise noted, the following background derives from the undisputed facts as set forth by the parties in their Local Rule 56.1 Statements of Undisputed Material Facts and counterstatements thereto. (<u>See</u> "Siskind Defs. Stmt.," Dkt. No. 183; "Murciano Defs. Stmt." Dkt. No. 193; "H. Daya Stmt.," Dkt. No. 202; "Siskind Defs. Counterstmt.," Dkt. No. 209; "Murciano Defs. Counterstmt.," Dkt. No. 211; "H. Daya Counterstmt.," Dkt. No. 217.) The Court has also considered the full record submitted by the parties, including the following frequently cited declarations and exhibits: "Sosonko Moving Decl.," Dkt. No. 188; "Sosonko Opp'n Decl.," Dkt. No. 208; "Sosonko Reply Decl.," Dkt. No. 226; "Siskind Decl.," Dkt. No. 184; "Murciano Moving Decl.," Dkt. No. 194; "Murciano Opp'n Decl.," Dkt. No. 212; "Scheier Decl.," Dkt. No. 200; "Grossman Decl.," Dkt. No. 218; "March 2011 Agreement," Dkt. No. 188-1; "Vintage Member Agreement," Dkt. No. 188-12; "First Am. to Vintage Member Agmt.," Dkt. No. 194-8. No further citations to the record will be made herein except when specifically quoted. The Court construes any disputed facts discussed in this section and the justifiable factual inferences arising therefrom in the light most favorable to the nonmovant for each motion, as required under the standard set forth in Section II below.

was formed in 2005 as a Florida limited liability company, and its only members were Murciano, Isaac Cohen ("Cohen"), and Benjamin Levy. Reward was formed in 2008 as a Florida limited liability company, and Murciano and Cohen were its sole members. Both Do Denim and Reward were eventually dissolved on February 13, 2017.

RSC is incorporated and headquartered in New York, and distributes apparel, accessories, and home goods. Siskind was the sole shareholder of RSC until 2004, when he sold 99.9 percent of his common shares to the Jon Siskind 2004 Irrevocable Trust. Although Siskind retained only 0.1 percent of common shares, this amount consisted of 100 percent of the voting shares in RSC. None of the members in the Judgment Debtors were ever shareholders in RSC. Additionally, as explained further below, in April 2011, Siskind, Murciano, Jon Siskind, Timothy Fullum, and Jonathan Fuchs formed Vintage, a Florida limited liability company.

On June 14, 2011, H. Daya commenced an action in this District against the Judgment Debtors, and eventually obtained the Judgment on June 29, 2012.[3] The Judgment Debtors have never paid any portion of the Judgment. H. Daya in turn

---

[3]   See H. Daya Int'l Co. v. Do Denim LLC, No. 11 Civ. 4028 (S.D.N.Y. June 14, 2011). The Clerk of Court entered a Judgment against Do Denim for $326,675.42, and against Reward for $830,336.81. See Judgment, H. Daya Int'l Co. v. Do Denim LLC, No. 11 Civ. 4028 (S.D.N.Y. June 14, 2011), Dkt. No. 30.

commenced the current action against the Defendants based on RSC and Vintage's contractual relationship with the Judgment Debtors.

1. The Financing Agreements

Over the years, Do Denim entered into several financing agreements to help run its business. On September 22, 2008, Do Denim entered into a factoring agreement[4] ("Initial Factoring Agreement") with Rosenthal & Rosenthal, Inc. ("Rosenthal"), which is not a party to this action. Pursuant to the Initial Factoring Agreement, Do Denim sold and assigned to Rosenthal all its accounts receivable ("factored accounts"), which meant Rosenthal had the right to collect the amounts owed by Do Denim's customers. In return, Rosenthal agreed to advance Do Denim up to 85 percent of the aggregate purchase price of amounts owed by customers on factored accounts, if or when Do Denim requested an advance. On September 29, 2008, Rosenthal and Do Denim amended the Initial Factoring Agreement (collectively, the "2008 Factoring

---

[4]   "Factoring is a form of financing that allows a manufacturer to obtain immediate payment for the goods it sells even though the buyer is not obligated to pay for those goods until the conclusion of a credit period, usually months after the sale." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 234 (2d Cir. 1999). When the manufacturer ships the goods to the buyer (e.g., a retailer), the factor (i.e., the lender) "pays the manufacturer the purchase price evidenced by the invoice. In return, the factor obtains the right to receive payment on the invoice from the buyer at the conclusion of the credit period, as well as the right to collect related expenses from the manufacturer." Id.

Agreement") to grant Rosenthal a continuing security interest in all of Do Denim's inventory and proceeds thereof.

On March 18, 2009, Do Denim entered into a supply agreement with Star Funding, Inc. ("Star Funding") and Rosenthal ("2009 Supply Agreement"). Star Funding agreed to (i) supply Do Denim with the goods necessary to fulfil certain customer purchase orders, or (ii) provide Do Denim with the financial accommodations to enable Do Denim to purchase the goods necessary to fulfill customer orders. In transactions where Star Funding provided assistance, the sale of goods to Do Denim's customers again resulted in factored accounts that Do Denim agreed to sell and assign to Rosenthal.

2. Connection between RSC, Judgment Debtors, and Vintage

By December 2010, Do Denim accumulated significant debts to Rosenthal and Star Funding that were attributable to the 2008 Factoring Agreement and the 2009 Supply Agreement. Around this time, Rosenthal introduced Murciano to Siskind and RSC, so that RSC could help the Judgment Debtors sell its inventory and pay down its debts to various factors (i.e., lenders), including Rosenthal and Star Funding. On March 9, 2011, RSC and Murciano agreed to a joint venture to help the Judgment Debtors pay down their debts ("March 2011 Agreement"). RSC would purchase the Judgment Debtors' inventory held at ports in New York and Los Angeles, and sell

that inventory at a price agreed to by Murciano and RSC. At first, the parties agreed RSC would receive a 7.7 percent commission on the sale of goods to be released from these containers, but the parties later agreed to increase this to 10 percent. Pursuant to the March 2011 Agreement, funds from the sale of the Judgment Debtors' inventory would also be used to pay down their debts to various factors or lenders.

As noted above, in April 2011, Siskind, Murciano, Jon Siskind, Timothy Fullum, and Jonathan Fuchs formed Vintage to facilitate the joint venture between RSC and the Judgment Debtors. These individuals were the only members in Vintage. Further, Vintage's membership agreement ("Vintage Member Agreement") provided that the capital contribution "shall be a total of $100,000 with each Member having a twenty (20) percent interest upon payment of their respective $20,000 capital contribution which shall be paid within one (1) year of the date hereof." (See Vintage Member Agreement ¶ 1.) Murciano never paid the $20,000 capital contribution, but he was listed as a member of Vintage.

RSC and Vintage were formally distinct companies but appeared to operate hand-in-hand. RSC was responsible for "overhead operations" for Vintage, which included office space, financing, accounting, payroll, legal, and warehouse operations. (See Vintage Member Agreement at 1.) RSC provided

7

these services in exchange for "fifteen (15) percent of total sales less mark downs, charge backs and other customary allowances" from Vintage. (Id.) If the operational costs exceeded 15 percent, then RSC would be responsible for the excess costs. Additionally, when Vintage was first formed, RSC issued purchase orders on behalf of Vintage on several occasions because Vintage did not have a credit history. However, RSC and Vintage maintained separate bank accounts, financial statements, general ledgers, and filed separate tax returns.

### 3. Allegedly Fraudulent Transfers

In practice, there were two aspects to the joint venture to pay down the Judgment Debtors' debts. These two aspects correspond to twenty payments from Do Denim (via Rosenthal) to RSC that are identified in paragraph 38 of the SAC ("Paragraph 38"). Preliminarily, it is undisputed that a $500,000 payment on July 15, 2011, listed in Paragraph 38, was part of RSC's regular business and is unrelated to H. Daya's claims. As a result, only nineteen of the payments listed in Paragraph 38 are allegedly fraudulent.

The first aspect of the joint venture involved twelve payments from Do Denim (via Rosenthal) that reimbursed RSC for funds RSC paid to release goods held at ports in New York and Los Angles. The second facet of the joint venture regards

8

seven payments reimbursing RSC for funds it paid to Do Denim's third-party suppliers or creditors to either (a) finish manufacturing goods or (b) secure the release of other inventory.

a. Funds for Inventory Held at Ports

Soon after entering into the March 2011 Agreement, RSC became aware of five shipping containers of Do Denim inventory held at ports in New York and Los Angeles. These containers were shipped from China, in accordance with the 2009 Supply Agreement with Star Funding. But before the inventory could be released and used to fulfil outstanding customer orders, Do Denim had to pay $889,880.04 to Star Funding, customs brokers, and freight forwarders. Pursuant to the March 2011 Agreement, RSC paid the $889,880.04. The twelve payments that correspond to Rosenthal's reimbursements to RSC for goods held at ports are as follows:

| Advances to Release Goods at U.S. Ports | |
|---|---|
| Date | Amount Transferred from Do Denim (via Rosenthal) to RSC |
| May 2, 2011 | $65,000.00 |
| May 27, 2011 | $17,856.91 |
| June 6, 2011 | $72,529.70 |
| June 7, 2011 | $54,639.36 |
| June 10, 2011 | $8,220.48 |

| June 15, 2011 | $35,838.72 |
|---|---|
| July 1, 2011 | $11,173.20 |
| July 5, 2011 | $15,070.55 |
| July 5, 2011 | $55,338.18 |
| July 15, 2011 | $33,183.39 |
| July 25, 2011 | 124,462.80 |
| August 31, 2011 | $303,401.21 |
| **Total** | $796,714.50 |

(See SAC ¶ 38.) Rosenthal ultimately paid RSC a total of $978,868, which includes RSC's ten-percent commission.

b. Funds to Complete Manufacturing

The remaining seven payments identified in Paragraph 38 relate to the second facet of the joint venture, which was the advancement of funds to finish manufacturing Do Denim goods. As part of this second stage, from July to October 2011, Do Denim (via Rosenthal) transferred $2.7 million to RSC, which was intended as repayment for advances RSC made to pay invoices from factories or third-party suppliers to (i) finish manufacturing Do Denim's goods, or (ii) secure the release of Do Denim's inventory. All of the invoices were for Do Denim goods, but some were issued to Do Denim directly while others were issued to RSC or Vintage. These seven payments are as follows:

| Advances to Factories and Suppliers | |
|---|---|
| Date | Amount Transferred from Rosenthal to RSC |
| July 20, 2011 | $1,000,000 |
| July 28, 2011 | $200,000 |
| August 2, 2011 | $25,000 |
| August 19, 2011 | $150,000 |
| September 1, 2011 | $500,000 |
| October 6, 2011 | $400,000 |
| October 7, 2011 | $425,000 |
| **Total** | $2,700,000 |

(See SAC ¶ 38.)

From this $2.7 million, $1,225,766.97 was attributable to a promissory note and agreement, dated June 29, 2011, between Do Denim and RSC. In the SAC, H. Daya further conceded that this amount, and an additional $538,500 for another contract between RSC and the Judgment Debtors, was for "payment of legitimate debts of the judgment-debtor defendants." (SAC ¶ 39.)

c. The Do Denim Trademark

The Do Denim trademark ("Trademark") went through several hands before landing in Vintage's possession. In May 2010, Do Denim assigned the Trademark to SMIC Holdings LLC ("SMIC"), which was before the Siskind Defendants were

11

introduced to the Murciano Defendants. Cohen and Murciano were members of SMIC.

In March 2011, SMIC transferred the trademark to RF Collection LLC ("RF Collection"). In May 2011, RF Collection then transferred the trademark to Vintage. Vintage ceased using the trademark in 2013, the same year it also ceased operations, before its eventual dissolution in 2014. In May 2014, the Trademark's registration was cancelled when Vintage failed to make a necessary filing with the U.S. Patent and Trademark Office ("PTO").

Over a year later, on June 26, 2015, Only Brands applied to the PTO to re-register the Trademark. Only Brands was a Florida corporation whose sole shareholders were Murciano and Cohen. Although it re-registered the Trademark, Only Brands eventually abandoned the Trademark altogether. Like most of the corporate defendants in this case, Only Brands was later dissolved in September 2017.

Separately, none of the Defendants have ever possessed a registered trademark for "Reward Jeans." Reward applied to register the "Reward Jeans" trademark, but the PTO denied the application due to the likelihood of confusion with a pre-existing "Reward" trademark for apparel. Nevertheless, various documents in the record refer to the existence of a "Reward Jeans" trademark.

### 4. <u>Payments to Siskind and Murciano Individually</u>

As part of the joint venture, Murciano worked for Vintage and, pursuant to the Vintage Member Agreement, he was responsible for "sales, product design and sourcing for purposes of production." (Vintage Member Agreement ¶ 5.) The First Amendment to the Vintage Member Agreement provides that Murciano would "be paid a salary of $7,000 per calendar month plus a monthly advance of pre-tax profits of $18,000." (First Am. to Vintage Member Agmt. ¶ 1.) Among other income received from Vintage, Murciano reported on his IRS Form 1099 that, from 2011 to 2013, he received a total of $405,000 in monthly advances from Vintage. Separately, on July 6, 2012, RSC paid Siskind $1 million, which was repayment of a loan Siskind made to RSC in 2004.

### B. <u>PROCEDURAL HISTORY</u>

H. Daya commenced this action on November 8, 2016, (<u>see</u> Dkt. No. 1), and filed an amended complaint on March 30, 2017. (<u>See</u> Dkt. No. 56). On June 15, 2017, the Court denied Siskind's motion to dismiss the individual claims against him. (<u>See</u> Dkt. No. 65.) After H. Daya filed the SAC on May 22, 2018, the Defendants filed their respective answers on July 12, 2018. (<u>See</u> Dkt. Nos. 83-88).

The parties proceeded with fact discovery through the summer of 2020. On March 23, 2021, the Siskind Defendants

filed a letter requesting a pre-motion conference prior to moving for summary judgment. (See Dkt. No. 162.) The Murciano Defendants filed a similar letter on March 26, 2021. (See Dkt. No. 165.) Also on March 26, 2021, H. Daya filed its letter opposing the Defendants' requests, while also requesting a pre-motion conference prior to moving for summary judgment. (See Dkt. No. 166.) On April 12, 2021, the Court granted the parties leave to file their respective motions for summary judgment, but denied the requests for a pre-motion conference. (See Dkt. No. 174.)

The parties filed their opening briefs on June 15, 2021. (See "Siskind Defs. Br.," Dkt. No. 186; "Murciano Defs. Br.," Dkt. No. 192; "H. Daya Br.," Dkt. No. 199.) They filed opposition briefs on July 2, 2021. (See "Siskind Opp'n," Dkt. No. 207; "Murciano Defs. Opp'n," Dkt. No. 210; "H. Daya Opp'n," Dkt. No. 216.) And they filed reply briefs on July 13, 2021. (See "Siskind Defs. Reply," Dkt. No. 225; "Murciano Defs. Reply," Dkt. No. 227; "H. Daya Reply," Dkt. No. 228.)

C. PARTIES' ARGUMENTS

The Defendants move for summary judgment on all of H. Daya's claims, and present several overlapping arguments in their respective briefs. For the constructive fraudulent conveyance claims (Counts One through Four), the Defendants argue broadly that the transfers were made without fair

14

consideration. (See Siskind Defs. Br. at 10-15, 23-25; Murciano Defs. Br. at 8-14.) For Count Five, the Defendants also argue that there is no evidence of the knowledge or intent to defraud a creditor, which is needed for an actual fraudulent conveyance. (See Siskind Defs. Br. at 15-17; Murciano Def. Br. at 14-16.) On Count Six, the Defendants argue that there was no de facto merger between RSC and the Judgment Debtors because there was no continuity of ownership; and there was no de facto merger between Vintage and the Judgment Debtors because the other hallmarks of a de facto merger are absent. (See Siskind Defs. Br. at 20-23; Murciano Def. Br. at 16-20.) On Count Seven, the Defendants argue that no New York court has held a member to a joint venture joint and severally liable for the pre-existing debts of another member. (See Siskind Defs. Br. at 19-20; Murciano Defs. Br. at 19-20.) And for Count Eight, the Defendants reiterate the above arguments to respond to H. Daya's hybrid claim that RSC and Vintage were successors to the Judgment Debtors and that the payments to Murciano and Siskind individually were therefore fraudulent. (See Siskind Defs. Br. at 23-25; Murciano Defs. Br. at 8-12.)

H. Daya simultaneously moves for summary judgment, but only as to Counts Six and Eight. H. Daya argues that it established all the elements of a de facto merger between

RSC, Vintage, and the Judgment Debtors. (See H. Daya Br. at
5-22.) As for Count Eight, H. Daya argues that — as an
extension of a de facto merger between all the Defendants —
transfers from a debtor to an insider are fraudulent as a
matter of law. (See H. Daya Br. at 23-25.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if the evidence shows
that "there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986). In this context, a court's role "is not to resolve
disputed issues of fact but to assess whether there are any
factual issues to be tried." Knight v. U.S. Fire Ins. Co.,
804 F.2d 9, 11 (2d Cir. 1986).

The moving party bears the initial burden of
demonstrating the absence of any genuine issues of material
fact. See Celotex, 477 U.S. at 323. "When a motion for summary
judgment is supported by documentary and testimonial
evidence, the nonmoving party may not rest upon mere
allegations or denials — rather, he must present sufficient
probative evidence to establish a genuine issue of material
fact." Horror Inc. v. Miller, 15 F.4th 232, 240 (2d Cir.
2021). Evidence that is "'merely colorable,' or is not
'significantly probative'" is insufficient to defeat a motion

for summary judgment. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). In short, the nonmoving party's evidence must be persuasive enough that a reasonable jury could return a judgment in their favor. Id. at 241.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A factual dispute is material if it "might affect the outcome of the suit," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III.   DISCUSSION

A. FRAUDULENT CONVEYANCE

H. Daya asserts three bases for its fraudulent conveyance claims in Counts One through Five: (1) Do Denim's reimbursements to RSC, (see SAC ¶¶ 38-43; 103-14); (2) the transfer of the Trademark to Vintage, and Only Brands's registration of the Trademark when Vintage let it lapse, (see SAC ¶¶ 48-51; 103-14); and (3) RSC's $1 million payment to Siskind and Vintage's $405,000 payment to Murciano. (See SAC ¶¶ 44-47; 103-14; H. Daya Opp'n at 7.) H. Daya's third basis for a fraudulent conveyance claim is intertwined with its hybrid claim in Count Eight, which asserts that there was a

de facto merger between the Defendants, and that the payments to Murciano and Siskind were fraudulent. The Court considers these bases in turn, but the Court addresses this third basis further below after discussing the de facto merger theories.

1. <u>Transfers from Do Denim to RSC</u>

The transfers to RSC, listed in Paragraph 38, fall into two categories. First, twelve payments between May and August 2011 from Do Denim (via Rosenthal) to RSC that were reimbursements for RSC's monetary advances used to secure the release of completed inventory that was being held at U.S. ports. (<u>See</u> Siskind Defs. 56.1 ¶¶ 19-28.) Second, seven payments between July and October 2011 from Do Denim (via Rosenthal) to RSC that were reimbursements for monetary advances used to complete the manufacture of Do Denim goods. (<u>See</u> Siskind Defs. Stmt. ¶¶ 29-40.) These transfers underpin H. Daya's constructive and actual fraudulent conveyance claims.

a. <u>Constructive Fraud</u>

Under the DCL, a conveyance is constructively fraudulent if it is without "fair consideration" and if one of the following conditions is met: "(i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining

property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275." <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 53 (2d Cir. 2005). For Section 273-a claims, "a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." <u>See</u> <u>Grace v. Bank Leumi Tr. Co. of N.Y.</u>, 443 F.3d 180, 188 (2d Cir. 2006). At bottom, "[a]n essential element of a claim pursuant to DCL [Sections] 273, 273-a, 274, 275, is lack of fair consideration." <u>Atlanta Shipping Corp. v. Chem. Bank</u>, 818 F.2d 240, 248 (2d Cir. 1987).

Fair consideration exists where the following three elements are satisfied: "first, 'the recipient of the debtor's property must either . . . convey property in exchange or . . . discharge an antecedent debt in exchange'; second, 'such exchange must be a fair equivalent of the property received'; and third, 'such exchange must be in good faith.'" <u>United States v. Watts</u>, 786 F.3d 152, 164 (2d Cir. 2015) (quoting <u>Sharp</u>, 403 F.3d at 53). In general, "the party challenging the conveyance" has the "burden of proving . . . the lack of fair consideration." <u>United States v. McCombs</u>, 30

F.3d 310, 324 (2d Cir. 1994) (quoting <u>Am. Inv. Bank, N.A. v.</u>
<u>Marine Midland Bank, N.A.,</u> 595 N.Y.S.2d 537, 538 (2d Dep't
1993)).

There is no genuine dispute that a large portion of Do
Denim's payments to RSC were reimbursements for the money RSC
advanced pursuant to the March 2011 Agreement, and were
therefore made with fair consideration. (<u>See</u> Siskind Defs.
Stmt. ¶¶ 25-39; H. Daya Counterstmt. ¶¶ S19-39.)[5] However, H.
Daya raises a factual dispute about two subsets of payments
to RSC. First, H. Daya argues that some of the transfers to
RSC lacked fair consideration because RSC was supposedly
reimbursed for eight invoices to factories and suppliers
where Do Denim was uninvolved. (<u>See</u> H. Daya Opp'n at 8-9; H.
Daya Counterstmt. ¶ S40.) H. Daya cites the deposition
testimony from RSC's controller, Galina Sosonko ("Sosonko"),

---

[5]   H. Daya's Local Rule 56.1 Counterstatement largely responds to the
facts about these payments by presenting legal assertions to support
its de facto merger claim. (<u>See</u> H. Daya Counterstmt. ¶¶ S19-39.) Using
a counterstatement to take issue with the implications or
characterizations of facts in a moving party's statement of facts, and
in turn make legal arguments in the counterstatement, is improper under
Local Rule 56.1. <u>See</u> <u>LG Cap. Funding, LLC v. PositiveID Corp.</u>, No. 17
Civ. 1297, 2019 WL 3437973, at *2 (E.D.N.Y. July 29, 2019) ("The Court
can . . . disregard legal conclusions or unsubstantiated opinions in
a Local Rule 56.1 statement." (internal quotation marks omitted));
<u>Crump v. Fluid Handling, LLC.</u>, No. 17 Civ. 45, 2019 WL 2145929, at *2
(W.D.N.Y. Mar. 29, 2019) ("Rather than scrutinize a Rule 56.1 statement
line by line, a court may simply disregard any improper assertions or
inadmissible evidence."); <u>see also</u> Individual Practices of United
States District Judge Victor Marrero Rule II.E.3 ("Local Rule 56.1
Statements . . . shall not be used for argumentation of legal issues
or recitation of case law, or . . . repetition of conclusory
pleadings."). Therefore, the Court disregards H. Daya's improper
assertions.

in which Sosonko stated that Do Denim was not involved with these eight invoices. (See H. Daya Opp'n at 8-9.) These eight invoices were issued directly to RSC or Vintage from September to November 2011, and total $849,954.90. (See H. Daya Counterstmt. ¶ S40; Sosonko Decl., Ex J (Bates S001047, S001043, S001050-51, S001061-63.)[6]

The Siskind Defendants respond to H. Daya's arguments by noting that H. Daya does not refute that there were occasions where Do Denim ordered goods but the invoices from suppliers were issued directly to RSC or Vintage. (See Siskind Defs. 56.1 ¶ 37; Sosonko Moving Decl. ¶ 19; H. Daya Counterstmt. ¶ S36-39, S36-37.) The invoices associated with these eight payments indicate that the payments were for goods bearing the Trademark. (See Sosonko Decl., Ex J; Sosonko Reply Decl. ¶ 2.) Nonetheless, the inconsistencies between the testimonial and documentary evidence raises a genuine dispute of material fact about whether Do Denim's transfers related to the eight invoices were pursuant to the March 2011 Agreement. In other words, there is a material fact dispute about whether there was fair consideration for transfers to RSC that are related to these eight invoices.

---

[6]   These invoices are listed under sample invoices 13, 15, 16, and 20, respectively. (See Sosonko Decl., Ex J.)

The second issue that H. Daya raises relates to a series of transactions listed on RSC's general ledger from May to July 2011 that are identified simply as "Do Denim." (See H. Daya Counterstmt. ¶ 40.) These payments total approximately $435,000, and H. Daya summarily states that these are transactions for Do Denim labelled apparel that RSC "failed to credit." (See H. Daya Opp'n at 9; H. Daya Counterstmt. ¶ 40.) It is unclear what exactly H. Daya is arguing, but RSC counters that all the payments correspond to payments on the itemization of reimbursements and commissions RSC submitted in support of its motion. (See Siskind Defs. Reply at 3 n.4; Sosonko Reply Decl. ¶ 3.)

An examination of RSC's general ledger and RSC's itemization of reimbursements and commissions indicates that almost all these payments appear on both documents. (Compare Sosonko Moving Decl., Ex. D (Bates S00990), with Grossman Decl., Ex. 25 (Bates SISKIND_00015827 to 15828); see Sosonko Reply Decl. ¶ 3.) There are only nine transactions — totaling $7,128 — on RSC's general ledger that do not match the amounts in RSC's itemization of reimbursements and commissions. (See Grossman Decl., Ex. 25 (Reference Nos. 014325, 014326, 014327, 014328, 014359, 014360, 014387, 014388, and 014389).) To the extent H. Daya is arguing that any of the allegedly fraudulent transfers identified in Paragraph 38 relate to the

nine payments on RSC's general ledger, there is a material factual dispute about whether those transfers were made with fair consideration.

As for the remaining payments, H. Daya failed to present any evidence of a genuine dispute about whether the remaining payments in Paragraph 38 were made pursuant to the March 2011 Agreement and were made with fair consideration. As a result, for H. Daya's constructive fraudulent conveyance claim against RSC, the only issues suitable for trial are whether the transfers from Do Denim to RSC, in Paragraph 38, that relate to the above seventeen payments — the eight invoices directly to RSC or Vintage, and the nine payments on RSC's general ledger — were made with fair consideration. Summary judgment is appropriate as to any other reimbursements to RSC that H. Daya relies on for its constructive fraudulent conveyance claim.

b. Actual Fraud

DCL Section 276 provides that a conveyance may be voided on the basis of actual fraud if "actual intent to hinder, delay, or defraud present and future creditors" is established. DCL § 276. Fraudulent intent must be proven by clear and convincing evidence. See HBE Leasing Corp. v. Frank, 48 F.3d 623, 639 (2d Cir. 1995). But due to the difficulty with proving fraudulent intent, New York law permits courts

to rely on "badges of fraud" when determining whether to void an allegedly fraudulent transfer. See Sharp, 403 F.3d at 56. These badges include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; . . . and retention of control of the property by the transferor after the conveyance." Id. (quoting Wall St. Assocs. v. Brodsky, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)). Unlike a constructive fraudulent conveyance claim, "a transferor need not receive fair consideration for a conveyance to be fraudulent under [S]ection 276." DoubleLine Cap. LP v. Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 467 (S.D.N.Y. 2018). "[A] transfer motivated by actual fraudulent intent may not be voided if a transferee who paid fair consideration did not have actual or constructive knowledge of such intent." HBE Leasing, 48 F.3d at 639; see also DCL § 278(1) (providing that a credit may not set aside a conveyance where a transferee "knowledge of the fraud at the time of the purchase").

As noted above, H. Daya fails to establish that the bulk of the transfers listed in Paragraph 38 lacked fair consideration. A genuine dispute of material fact exists here only regarding whether there was fair consideration for the the seventeen payments identified above. H. Daya also fails

24

to provide any evidence that RSC had actual or constructive knowledge of the Judgment Debtors' alleged intent to defraud H. Daya of payment on the Judgment. (See Siskind Defs. Stmt. ¶¶ 41-42; H. Daya Counterstmt. at ¶ S41.) As a result, the undisputed facts establish that most of the payments in Paragraph 38 do not provide a basis for an actual fraudulent conveyance claim, and summary judgment in favor of the Defendants is appropriate as to those payments where fair consideration was already established. As for any transfers in Paragraph 38 related to the seventeen payments about which there is a factual dispute, the parties should address at trial whether those payments also provide a basis for an actual fraudulent conveyance.

    2. Transfer of the Do Denim Trademark

The Defendants also argue that the transfer of the Trademark does not support a fraudulent conveyance claim against Vintage or Only Brands because the Judgment Debtors never transferred it to Vintage, and that Only Brands acquired the Trademark after its registration lapsed. (See Siskind Defs. Br. at 17-19; Murciano Defs. Br. 20-21.) As noted, the Trademark passed through SMIC and RF Collection before ending up with Vintage in May 2011. (See Siskind Defs. Stmt. ¶¶ 56-57; Murciano Defs. Stmt. ¶¶ 28-29.) Ultimately, Vintage stopped using the Trademark in 2013 when it also ceased

operations, and the Trademark's registration lapsed in May 2014. (See Siskind Defs. Stmt. ¶¶ 61-62.) And over a year later, on June 26, 2015, Only Brands submitted an application to the PTO to re-register the trademark, before Only Brands also abandoned the Trademark. (See Murciano Def. Stmt. ¶¶ 31-33, 35.)

H. Daya's constructive and actual fraudulent conveyance claims based on the Trademark fail against Vintage because H. Daya was never a creditor of SMIC or RF Collection. "It is well settled that in order to set aside a fraudulent conveyance, one must be a creditor of the transferor; those who are not injured by the transfer lack standing to challenge it." Eberhard v. Marcu, 530 F.3d 122, 129 (2d Cir. 2008); see also Watts, 786 F.3d at 162 n.3 (finding that although Eberhard involved a Section 276 claim, "the relevant language invoking a transferor's 'creditors' is substantially the same" in Sections 273 and 276). Since H. Daya was never a creditor of SMIC or RF Collection, H. Daya cannot void the transfer of the Trademark from SMIC to RF Collection and then to Vintage. H. Daya's fraudulent conveyance claims against Only Brands also fail because no entity ever transferred the Trademark to Only Brands, which merely re-registered the Trademark on its own in 2015. (See Murciano Defs. Stmt. ¶ 31-

32.) In other words, there is no transfer to Only Brands that can be voided pursuant to a DCL claim.

For the reasons stated above, summary judgment is warranted dismissing H. Daya's fraudulent conveyance claims based on the Trademark's transfer.

B. DE FACTO MERGER[7]

The Defendants and H. Daya cross-move for summary judgment on H. Daya's de facto merger claim. H. Daya presents several arguments it contends establish a de facto merger between RSC, Vintage, and the Judgment Debtors. (See H. Daya Br. at 8-23.) But H. Daya essentially asserts that there was a merger between RSC and Vintage, which in turn merged with the Judgment Debtors. (See id. at 17-23.) The Defendants argue that there was no de facto merger between RSC and the Judgment Debtors because there was no continuity of ownership, and that the other elements of a de facto merger are absent between Vintage and the Judgment Debtors. (See Siskind Defs. Br. at 20-23; Murciano Def. Br. at 16-20.)

---

[7]   Although RSC was incorporated in New York, and the Judgment Debtors and Vintage were incorporated in Florida, the parties' briefs assume New York law applies to H. Daya's de facto merger claim. See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is . . . sufficient to establish the applicable choice of law."); Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp., 971 F. Supp. 2d 368, 378 (S.D.N.Y. 2013) (applying choice of law analysis to de facto merger claim).

Under New York law, "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." Cargo Partner AG v. Albartrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003). One exception to this rule applies for a "buyer who merged with a seller" (i.e., a de facto merger). Id.[8] There are four hallmarks for identifying a de facto merger:

> (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation.

New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). These hallmarks should be balanced "in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." AT & S Transp. v. Odyssey Logistics & Tech. Corp., 803 N.Y.S.2d 118, 120 (2d Dep't 2005).

"[N]ot all of these elements are necessary to find a de facto merger," Cargo Partner, 352 F.3d at 46 (quotation

---

[8] The full set of exceptions are: (1) "a buyer who formally assumes a seller's debts"; (2) "transactions undertaken to defraud creditors"; (3) a "buyer who merged with a seller"; and (4) "a buyer that is a mere continuation of a seller." Cargo Partner, 352 F.3d at 45. H. Daya has invoked only the third exception for a de facto merger.

omitted), but "'continuity of ownership is the essence of a merger,' and the doctrine of de facto merger cannot apply in its absence." Priestley v. Headminder, Inc., 647 F.3d 497, 505 (2d Cir. 2011) (quotation and citation omitted); TBA Global, LLC v. Fidus Partners, LLC, 15 N.Y.S.3d 769, 780 (1st Dep't 2015) ("We agree with the Second Circuit that, under New York law, continuity of ownership is 'the touchstone of the [de facto merger] concept' and 'thus a necessary predicate to a finding of de facto merger." (quoting Nat'l Serv. Indus., 460 F.3d at 212)). "The purpose of requiring continuity of ownership is 'to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability.'" TBA Global, 15 N.Y.S.3d at 780 (quoting Nat'l Serv. Indus., 460 F.3d at 212). Put differently, "[t]he fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) *is* the 'substance' which makes the transaction inequitable." Id. (quoting Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 104 (S.D.N.Y. 2002)).[9] Continuity of ownership may be

---

[9]   See also In re N.Y.C. Asbestos Litig., 789 N.Y.S.2d 484, 486-87 (1st Dep't 2005) ("[C]ontinuity of ownership describes a situation where the parties to the transaction 'become owners together of what formerly belonged to each.'" (quoting Cargo Partner, 352 F.3d at 47)).

established when owners of the predecessor hold direct or indirect ownership in the successor. See id. at 779.

### 1. Judgment Debtors as a Single Entity

Before turning to whether there was a de facto merger between the RSC, Vintage, and the Judgment Debtors, the Court addresses H. Daya's arguments that the Judgment Debtors operated as a single entity with comingled assets. (See H. Daya Br. at 5-8.) H. Daya makes this argument for two reasons: (a) to aggregate the separate judgments against Do Denim and Reward Jeans, totaling $1,157,012.23, (see H. Daya Br. at 7-8); and (b) to buttress its theory that there were "two smaller defacto [sic] mergers" between RSC and Vintage, on one side, and Do Denim and Reward, on the other, which facilitated a "single larger defacto [sic] merger" between all companies. (See H. Daya Br. at 22-23.)

H. Daya argues that the Defendants are equitably estopped from arguing that the Judgment Debtors be treated as separate corporate entities. H. Daya relies principally on the first footnote in the Siskind Defendants' interrogatory response, which states: "'Do Denim,' as used from this point forward, *includes* [Reward], which was another Murciano company that sold apparel under the REWARD JEANS trademark." (See Scheier Decl., Ex. 2 at 5 n.1 (emphasis added).) H. Daya adds that it asked Sosonko, RSC's controller, during her

deposition whether "the footnotes to the text, in [the interrogatory], are accurate?" (Id., Ex. 3 at 99:13-16.) To which, Sosonko summarily responded, "Yes." (Id. at 99:17.) H. Daya argues that Sosonko's response established that "the assets and liabilities of judgment-debtor-defendant Do Denim LLC 'include' those of its co-debtor Reward Jean LLC." (H. Daya Reply at 2.)

Facts admitted by a party, such as interrogatory responses, are judicial admissions that bind a party throughout litigation. See Int'l Cards Co., Ltd. v. MasterCard Int'l Inc., No. 13 Civ. 2576, 2017 WL 1133425, at *4 (S.D.N.Y. Mar. 24, 2017). However, "[j]udicial admissions must be clear and unambiguous admissions of fact." Hausler v. JP Morgan Chase Bank, N.A., 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) (quotation omitted). But definitional shorthand in a footnote falls short of a clear and unambiguous admission. See Edible Int'l, LLC v. Google, LLC, No. 18 Civ. 00216, 2019 WL 1052180, at *3 (D. Conn. Mar. 5, 2019) (finding definitional shorthand in a party's opposition brief was not a judicial admission).

The statement in the Siskind Defendants' interrogatory on which H. Daya relies appears to be a definitional footnote, and does not constitute a clear and unambiguous admission that the Judgment Debtors operated as a single entity. Id.

Further, Sosonko's deposition testimony does not buttress H. Daya's argument because the testimony broadly confirmed the accuracy of nineteen footnotes in the interrogatory, one of which is the definitional footnote on which H. Daya relies. Sosonko did not clearly testify that Do Denim's assets and liabilities included those of Reward's. (See Sosonko Opp'n Decl. ¶ 7.) Additionally, in Sosonko's declaration in support of RSC's opposition, Sosonko stated that RSC has no information about the extent to which Do Denim and Reward operated their businesses as separate companies. (See Sosonko Opp'n Decl. ¶ 7.)[10] Simultaneously, the Murciano Defendants stated that Do Denim and Reward operated as separate entities, which maintained separate bank accounts, assets, liabilities, and tax returns. (See Murciano Opp'n Decl. ¶¶ 5-10.)

The only other evidence that H. Daya cites for its single entity proposition is an email from Sosonko about certain commission fees related to the Judgment Debtors. (See H. Daya

---

[10]  H. Daya is incorrect that the sham issue of fact doctrine applies. (See H. Daya Br. at 6-7.) The doctrine is inapplicable where "the later sworn assertion addresses an issue that . . . was not thoroughly or clearly[] explored" in the deposition. In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 758 F.3d 202, 213 (2d Cir. 2014) (quoting Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 43 (2d Cir.2000)). Sosonko's deposition testimony does not establish that the testimony thoroughly or clearly examined the issue of whether the footnote in the Siskind Defendants' interrogatory was an admission that the Judgment Debtors operated as a single entity. H. Daya's reliance on ePlus Grp. Inc. v. SNR Denton LLP, 976 N.Y.S.2d 70, 21 (1st Dep't 2013), is also misguided because the successor-in-interest in that case represented itself as the successor so it could obtain a novation on the predecessor's contracts. H. Daya has not presented similar evidence in this case.

Br. at 7; Scheier Decl., Ex. 4.) The email states it is attaching "information about DoDenim/RewardJeans commissions deal 2010," and the attachment is titled, "Statement of profit and distribution for Do Denim/Reward Jeans orders taken in 2010." (Scheier Decl. Ex. 4.) But aside from reference to "DoDenim/RewardJeans commissions," the email contains no more information about the Judgment Debtors operating as single entity. Ultimately, the Defendants have provided sufficient evidence to defeat H. Daya's argument that Judgment Debtors operated as a single entity.

### 2. De Facto Merger with Vintage and Judgment Debtors

The parties raise genuine disputes of material fact about whether there was a de facto merger between Do Denim and Vintage. As for the first hallmark of a de facto merger — continuity of ownership — there is a dispute about whether Murciano was truly an owner in Vintage. H. Daya highlights that the Vintage Member Agreement states that Murciano's compensation included "monthly pre-tax profits of $18,000" (see First Am. to the Vintage Member Agmt. ¶ 1); Murciano was listed as an owner on Vintage's tax forms (see Scheier Decl., Ex. 16 (Vintage tax forms); and Sosonko's deposition testimony identified Murciano as a member in Vintage. (See Scheier Decl., Ex. 3 at 18:7-12.) The Defendants do not contest that Murciano was listed as a member of Vintage, but

they assert that Murciano failed to fund his 20 percent interest in Vintage by never providing a $20,000 capital contribution. (See Siskind Defs. Stmt. ¶¶ 17-18; Murciano Defs. Stmt. ¶¶ 16-18.) Murciano also testified that he was never an owner in Vintage. (See Ewing Decl., Dkt. No. 187-2 at 36:2-4, 77:5-8.) The evidence raises a genuine dispute about whether Murciano had an ownership interest in Vintage. This alone is sufficient to deny summary judgment for H. Daya.

There is also a dispute about another hallmark requiring continuity of management, personnel, physical location, assets, and general business operations. The Siskind Defendants maintain that from summer of 2011 until Vintage ceased operations in 2014, Vintage and Do Denim did not share offices and instead Murciano worked from RSC's offices. (See Siskind Decl. ¶ 19; Sosonko Moving Decl. ¶ 27.) As noted, RSC provided Vintage with "overhead operations," which included space in RSC's office. (See Vintage Member Agreement at 1; Siskind Decl. ¶ 4 (identifying RSC's address as 1385 Broadway, 24th Floor, New York, New York 10018); Scheir Decl., Ex.7 (letter from Vintage using RSC's address).) And H. Daya identifies several letters from Do Denim to Rosenthal where Do Denim's letterhead used Vintage's same address. (See Scheier Decl., Ex. 9 (letters from May 27 to October 17, 2011).) Separately, Murciano was also an employee at Vintage

responsible for "sales, product design and sourcing for purposes of production." (Vintage Member Agreement ¶ 5.)

On October 5, 2011, Do Denim also sent a letter to a customer to "confirm that *all assets* of Do Denim LLC including its trademark were acquired by Vintage Apparel Group, LLC." (Scheier Decl., Ex. 8 (emphasis added).) The Siskind Defendants counter that RSC, not Vintage, paid for certain finished inventory Do Denim commissioned, in addition to paying Do Denim suppliers to complete the manufacture of other goods Do Denim ordered. (<u>See</u> Sosonko Moving Decl. ¶¶ 6-13, 15-21.) And that those assets were the only items RSC acquired. (<u>See</u> Sosonko Opp'n Decl. ¶ 6.)

The Court finds that the factual disputes about two hallmarks of a de fact merger described above precludes summary judgment for either side. <u>See</u> <u>N.Y. Asbestos Litig.</u>,789 N.Y.S.2d at 486-88 (finding there was no triable issue of fact where plaintiff did not establish continuity of ownership, or cessation of business and dissolution of the seller); <u>Arch Ins. Co. v. Petrocelli Elec. Co.</u>, No. 653580/13, 2019 WL 6217272, at *8 (N.Y. Sup. Ct. Nov. 20, 2019) (denying summary judgment where defendant raised fact issues about continuity of ownership, assumption of liabilities, and continuity of management). Given that not all the hallmarks are required, the Court finds that factual issues about two

hallmarks, including continuity of ownership, warrants denial of summary judgment.

Furthermore, the preceding evidence raises factual disputes specifically about whether there was a de facto merger between Vintage and Do Denim, but the evidence does not address whether there was a de facto merger between Vintage and Reward. H. Daya's argument that there was a de facto merger between Vintage and Reward is premised on the assertion that the Siskind Defendants' interrogatory admitted the Judgment Debtors were a single entity. (See H. Daya Br. at 14-15.) For the reasons discussed above, that is an insufficient basis to support a finding that there was a de facto merger between Vintage and Reward. Regardless, the Court reserves judgment because the parties have not squarely briefed the issue of whether the evidence establishes a de facto merger between Vintage and Reward. This issue may be addressed after the facts and legal arguments are developed at trial, as the Court considers further summary judgment motion practice unwarranted under the facts presented on the record before it. See Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294, 1999 WL 397751, at *6 (S.D.N.Y. June 16, 1999) (reserving judgment "until the relevant facts and legal arguments are developed, either at trial or on a renewed motion for summary judgment").

3. <u>De Facto Mergers with RSC</u>

The Siskind Defendants argue that there was no de facto merger between RSC and the Judgment Debtors because continuity of ownership is not sufficiently established. (<u>See</u> Siskind Defs. Br. at 20-22; Siskind Defs. Opp'n at 9-16.) The Siskind Defendants highlight that the only shareholders in RSC were Siskind and the Jon Siskind 2004 Irrevocable Trust, and that no member of either Judgment Debtor ever directly or indirectly owned any shares in RSC. (<u>See</u> Siskind Defs. Stmt. ¶¶ 4-5, 47.) In other words, continuity of ownership is absent because Murciano did not have an ownership interest in RSC that would provide any interest in the assets transferred from Do Denim to RSC — i.e., the cash payments discussed above. (<u>See</u> Siskind Defs. Opp'n at 13); <u>see</u> <u>Nat'l Serv. Indus.</u>, 460 F.3d at 212 (noting continuity of ownership is "designed to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability").

H. Daya presents several theories for how it nonetheless established continuity of ownership. H. Daya first argues that continuity of ownership can be established merely where a successor entity "absorbed and continued" the business of the predecessor. (<u>See</u> H. Daya Br. at 18-20.) H. Daya argues that the decision in <u>Tap Holdings LLC v. Orix Finance Corp.</u>,

970 N.Y.S.2d 178 (1st Dep't 2013), supports this argument. But that case is inapposite here because the Tap Holdings court found, on a motion to dismiss, that the executives in the successor company "received equity in [the successor] equivalent to or in excess of their equity in [the predecessor], which they held through [a holding company]." Id. at 180. In other words, the court found that continuity of ownership was sufficiently alleged based on indirect ownership through a holding company. See id. at 184; see also Miller v. Forge Mench Parntership, No. 00 Civ. 4314, 2005 WL 267551, at *8 (S.D.N.Y. Feb. 2, 2005) (finding continuity of ownership where owners in successor had indirect ownership through a holding company). H. Daya has not presented any evidence that Murciano had an indirect ownership interest in RSC through a holding company.

Instead, H. Daya argues that continuity of ownership between RSC and Judgment Debtors is established by Siskind and Murciano's shared ownership in Vintage. (See H. Daya Mot. at 20-22.) As noted above, H. Daya is essentially advancing a theory that there were "two smaller defacto [sic] mergers" between RSC and Vintage, on one side, and Do Denim and Reward, on the other, which facilitated a "single larger defacto [sic]

merger" among all the companies. (H. Daya Br. at 22-23.)[11] Although H. Daya called this arrangement a de facto merger between RSC and Vintage, this argument is really an alter ego theory that RSC and Vintage "operated as a single unit." (H. Daya Reply at 10; see H. Daya Br. at 14-15, 20-22.)

Successor liability is typically a vehicle for holding "the purchaser of a corporation's assets" liable "for the seller's debts." Cargo Partner, 352 F.3d at 45. However, under New York law, "an aggrieved party can still seek to impose liability on an individual associated with the successor entity under a corporate veil-piercing theory." Ji Li v. New Ichiro Sushi, Inc., No. 14 Civ. 10242, 2020 WL 2094095, at *5 (S.D.N.Y. Apr. 30, 2020); Tommy Lee Handbags, 971 F. Supp. 2d at 374-80 (finding plaintiff adequately alleged de facto merger claim based on alter ego theory). But under New York's choice of law principles, "the law of the state of incorporation determines when the corporate form will be

---

[11]  H. Daya also argues that there was a "link of continuous ownership" between RSC and the Judgment Debtors through Murciano's ownership in Vintage. (H. Daya Br. at 20-22.) In other words, Murciano was an owner in the Judgment Debtors and Vintage, and Siskind was an owner in Vintage and RSC, which establishes continuity of ownership among all the companies. (See id.) H. Daya fails to cite a case accepting such an attenuated theory of continuity of ownership, and this argument merely sidesteps the requirement that there be continuity of ownership between the predecessor and alleged successor. (See Siskind Defs. Opp'n at 12-14); TBA Global, 15 N.Y.S.3d at 780 ("[T]he fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) is the 'substance' which makes the transaction inequitable.")

disregarded and liability will be imposed on shareholders." Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir.1995)).

Although Florida law on veil piercing would seem to apply, given that Vintage is a Florida corporation, the parties have not briefed whether New York or Florida substantive law applies. Moreover, piercing the corporate veil would be moot if there was no de facto merger between Vintage and the Judgment Debtors. For those reasons, the Court reserves judgment issue until after the facts and legal arguments are developed at trial. See Wechsler, 1999 WL 397751, at *6.

4. Fraudulent Conveyances to Siskind and Murciano

The parties also cross-moved for summary judgment on H. Daya's fraudulent transfer claims based on payments to Siskind and Murciano individually. But this claim would also be impacted by a finding as to whether there was a de facto merger between Vintage and the Judgment Debtors, and whether RSC may be held liable under an alter ego theory of liability. Accordingly, as to this issue as well, the Court reserves judgment pending the resolution of the various disputes about whether there was a de facto merger between Vintage and the

Judgment Debtors, and whether RSC may be held liable under an alter ego theory.

C. <u>JOINT VENTURE</u>

As to Count Seven, the Defendants move for summary judgment on the grounds that no New York court has held a member to a joint venture joint and severally liable for the pre-existing debts of another member. (<u>See</u> Siskind Defs. Br. at 19-20; Murciano Defs. Br. at 19-20.) The Defendants argue that, although joint and several liability exists for members of a joint venture, New York courts have never found that a member of a joint venture could be joint and severally liable for the debts of another member. (<u>See</u> Siskind Defs. Br. at 19-20; Murciano Defs. Br. at 19-20.) H. Daya did not address these arguments in its opposition to the Defendants' motions. (<u>See</u> H. Daya Br. at 8-23; H. Opp'n 1-9.) H. Daya's failure to oppose the Defendants' arguments is sufficient grounds to grant summary judgment. <u>See</u> <u>Zhengfang Liang v. Cafe Spice SB,</u> <u>Inc.</u>, 911 F. Supp. 2d 184, 214 n.27 (E.D.N.Y. 2012) ("[T]he fact that plaintiff did not oppose defendants' motion for summary judgment on her claim . . . is also adequate grounds for granting summary judgment in defendants' favor on this claim.").

**ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants R. Siskind & Co., Inc. ("RSC"), Vintage Apparel Group LLC ("Vintage"), and Richard Siskind for summary judgment on the claims of plaintiff H. Daya International Co., Ltd. ("H. Daya") (Dkt. 182) is **DENIED** in part and **GRANTED** in part. Specifically, for Counts One through Five, the motion is granted as to the alleged fraudulent transfers described in paragraph 38 of the Second Amended Complaint, except the seventeen payments identified above and about which there are factual disputes. The motion is also granted as to the fraudulent transfer claims based on the transfer of the Do Denim LLC ("Do Denim") trademark. As to Count Six, the motion is denied as to the claim that there was a de facto merger between Vintage and Do Denim; judgment is reserved on whether there was a de facto merger between Vintage and Reward Jeans LLC ("Reward"), and whether RSC can be held liable for a de facto merger based on an alter ego theory. As to Count Seven, the motion is granted. As to Count Eight, judgment is also reserved, pending further resolution of the factual disputes in Count Six; and it is further,

**ORDERED** that the motion of defendants Do Denim, Reward, Only Brands, Inc., and Salomon Murciano for summary judgment

42

on H. Daya's claims (Dkt. 191) is **DENIED** in part and **GRANTED**
in part. Specifically, for Counts One through Five, the motion
is granted as to the alleged fraudulent transfers described
in paragraph 38 of the Second Amended Complaint, except the
seventeen payments identified above and about which there are
factual disputes. The motion is also granted as to the
fraudulent transfer claims based on the transfer of the Do
Denim trademark. As to Count Six, the motion is denied as to
the claim that there was a de facto merger between Vintage
and Do Denim; judgment is reserved on whether there was a de
facto merger between Vintage and Reward, and whether RSC can
be held liable for a de facto merger based on an alter ego
theory. As to Count Seven, the motion is granted. As to Count
Eight, judgment is also reserved, pending further resolution
of the factual disputes in Count Six; and it is further,

    **ORDERED** that the motion for summary judgment of H. Daya
(Dkt. No. 198) is **DENIED**. As noted above, on Count Six, the
motion is denied as to the claim that there was a de facto
merger between Vintage and Do Denim, and judgment is reserved
on (a) whether there was a de facto merger between Vintage
and Reward, and (b) whether RSC can be held liable for a de
facto merger based on an alter ego theory. As to Count Eight,
judgment is also reserved, pending further resolution of the
factual disputes in Count Six; and it is further,

**ORDERED** that within twenty days of the entry of this Order the parties shall submit a joint letter setting forth a timeline for trial in August 2022 or thereafter. The parties shall also advise whether this case is to be tried to a jury and whether the parties would consent to proceeding to trial before the designated Magistrate Judge for this action pursuant to 28 U.S.C. § 636(c).


**SO ORDERED.**

Dated:      March 31, 2022
            New York, New York

                                        _____
                                        Victor Marrero
                                        U.S.D.J.