```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/31/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

H. DAYA INTERNATIONAL CO., LTD.,

       Plaintiff,

  - against -

DO DENIM, LLC, REWARD JEAN, LLC, R. SISKIND & COMPANY, INC., SALMON MURCIANO, VINTAGE APPAREL GROUP, LLC, RICHARD SISKIND, ONLY BRAND, INC., COMPANIES 1-100 (fictitious entities), & JOHN DOES 1-100 (fictitious persons),

       Defendants.

---

**16 Civ. 8668 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

  Plaintiff, H. Daya International Co., Ltd., ("H. Daya") filed this action against Defendants, Do Denim, LLC ("Do Denim"), Reward Jean, LLC ("Reward"), R. Siskind & Company, Inc. ("RSC"), Salomon Murciano ("Murciano"), Vintage Apparel Group, LLC ("Vintage"), Richard Siskind ("Siskind"), Only Brand, Inc. ("Only Brand"), and fictitious entities and persons (together, "Defendants"). H. Daya seeks to enforce a judgment it obtained in a prior action against Do Denim and Reward (together, the "Judgment Debtors"). As pertinent here, H. Daya asserts that, with a judgment of $1,157,012.23 against them imminent (the "Judgment"), the Judgment Debtors consummated a *de facto* merger with RSC and Vintage to avoid payment of the judgment. H. Daya seeks to have RSC, Vintage,

and the Judgment Debtors held jointly and severally liable for the Judgment.

A one-week jury trial before this Court is set to begin on February 27, 2023. In connection with trial, RSC, Vintage, and Siskind (together, the "Siskind Defendants") filed a motion in limine to exclude from trial evidence the report and testimony of Nancy Marino ("Marino"), H. Daya's proffered expert on the *de facto* merger issue. (See "Motion," Dkt. No. 250; "Brief," Dkt. No. 251; "Marino Report" or "Report," Dkt. No. 252-2.) For the reasons stated below, the Court GRANTS the Motion in part, and DENIES it in part. Marino's Report, and testimony relating to it, shall be excluded as expert evidence and opinion. H. Daya, however, may offer Marino as a lay expert witness for the narrow purpose of eliciting her testimony generally about the apparel industry and its practices to the extent such specific information falls within the scope of her personal knowledge and experience.

## I. LEGAL STANDARDS

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks

2

omitted). Federal Rule of Evidence ("FRE") 402 provides that relevant evidence is generally admissible, and FRE 403 provides that evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by, among other considerations, a danger of misleading the jury or unfair prejudice to the non-offering party. See Fed. R. Evid. 402, 403.

FRE 702 governs the admissibility of expert testimony. Expert witness testimony is appropriate only if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In those circumstances, a person who possesses relevant specialized knowledge by virtue of certain "skill, experience, training, or education" may be qualified and testify as an expert witness. Id. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004).

Once qualified, an expert's testimony is admissible under FRE 702 only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

3

> (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court must decide whether a qualified expert's testimony rests on a reliable foundation or is simply based on "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993). If expert testimony is speculative or conjectural, it should be excluded. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).

In this regard, a court may exclude expert evidence where it concludes "that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Additionally, an expert "may not give testimony stating ultimate legal conclusions" or otherwise usurp the role of the trial judge or the jury in its fact-finding mission. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., MDL No. 1358, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) (quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991)). In connection with FRE 704, the advisory committee has made clear that, together, FREs 701, 702, and 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." Fed. R. Evid.

704, advisory committee notes on proposed rule. "Trial courts have broad discretion to admit or exclude expert testimony, provided such decisions are not 'manifestly erroneous.'" Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 301 (S.D.N.Y. 2001) (Marrero, J.) (quoting United States v. Aminy, 15 F.3d 258, 261 (2d Cir. 1994)).

## II.  DISCUSSION

The Siskind Defendants move to exclude the proposed expert testimony of Marino and her Report on grounds that she does not articulate or apply a reliable standard to support her opinion and that her opinion is not the subject of proper testimony as it would confuse, rather than help, and/or unduly prejudice the jury. H. Daya retained Marino to offer testimony in support of its case on the *de facto* merger issue. H. Daya asked Marino to provide her "opinion and professional services about the nature and substance of the relationships for the period of 2011-2012 among" Do Denim, Reward, RSC, and Vintage. (Marino Report at 5.) Marino's ultimate conclusion is that "to a reasonable degree of business certainty, the four defendants under review operated as a single integrated business company, without effective separation from each other, during the period of 2011-2012." (Id. at 18.) The Court agrees with the Siskind Defendants that the report and testimony should be excluded from trial evidence and grants

5

their Motion, in part, including for the additional threshold reason that the Court finds that Marino does not possess specialized knowledge, skill, or experience that qualifies her to opine on the *de facto* merger issue.

A. EXPERT QUALIFICATIONS

To determine whether a witness is qualified to testify as an expert, the Court "must first ascertain whether the proffered expert has the educational background or training in a relevant field." TC Sys. Inc. v. Town of Colonie, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002). Then the court "'should further compare the expert's area of expertise with the particular opinion the expert seeks to offer [and permit t]he expert . . . to testify only if the expert's particular expertise . . . enables the expert to give an opinion that is capable of assisting the trier of fact.'" Zwillinger v. Garfield Slope Housing Corp., No. 94 Civ. 4009, 1998 WL 623589, at *7 (E.D.N.Y. Aug. 17, 1998) (quoting Federal Judiciary Center, Reference Manual on Scientific Evidence 55–56 (1994) (alterations in original)).

As a general matter, the Court finds that Marino has extensive experience in the apparel industry as a business executive. However, the Court is not persuaded that that experience makes her qualified for the task of opining on

6

corporate governance and the *de facto* consolidation of business activities, which is the key question here.

Marino's previous activities as an expert witness illustrate the Court's skepticism. While it is not clear on the face of the Report how Marino was offered as an expert in those cases, a review of the allegations in each establishes that none of the cases involved the issue of *de facto* merger for which she is offered here. See Adidas Am. Inc. v. Forever 21 Inc., No. 17 Civ. 377, 2018 WL 2308315 (D. Or. Mar. 22, 2018) (trademark infringement); PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., No. 14 Civ. 764, 2015 WL 1442487 (S.D.N.Y. Mar. 27, 2015) (trademark infringement and unfair competition); Macy's, Inc. v. J.C. Penney Corp., Inc., 989 N.Y.S.2d 238 (N.Y. Sup. Ct. 2014) (breach of contract and tortious interference in a brand licensing dispute); Cross-Complaint, Ambiance Cosmetics, Inc. v. Eversoft, Inc., No. BC608801 (Cal. Super. Nov. 21, 2016) (injury from flood in commercial factory); Complaint, Seena Int'l, Inc. v. One Step Up, Ltd., No. 15 Civ. 1095 (S.D.N.Y. Feb. 16, 2015), Dkt. No. 1 (trademark infringement); Hartford v. Wal-Mart Stores, Inc., 765 So.2d 1081 (La. Ct. App. 2000) (slip and fall in retail store); Complaint, New Rise Brands Holdings, LLC v. IP Holdings Unltd, LLC, No. 0652278/2016 (N.Y. Sup. Ct. Apr. 28, 2016), Dkt. No. 1 (brand licensing agreement dispute).

Even insofar as any of these cases touched upon the *de facto* merger issue, the Marino Report concedes that Marino's qualifications specifically relating to this issue have not yet been evaluated by any court as gatekeeper, as she has not served as an expert trial witness regarding *de facto* merger disputes. (See Marino Report at 4.)

Although the Court is not persuaded that the *de facto* merger issue here is an appropriate subject for expert testimony, even if it were, nothing about Marino's "skill, experience, training, or education gives [her] specialized knowledge" about the operations of these particular defendants. See R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 268 (S.D.N.Y. 2010) (Marrero, J.) (adopting Magistrate Judge Report and Recommendation and excluding expert testimony of experienced executives who did "not draw on their areas of actual expertise in arriving at the[ir] conclusion").

This finding is bolstered by a review of Marino's background and experience. The Marino Report highlights that Marino's "over 30 years" in the apparel industry primarily involved "design and product development, merchandising, buying, marketing, sourcing, production, quality assurance, compliance, international operations and trade." (Marino Report at 1.) And Marino's leadership roles were focused on leading "design teams in the development and launching of

8

private and licensed brands" and working on "end-to-end global supply chains for improved performance and development of factory platforms." (Id.) Connecting the dots between Marino's background and the cases in which she has previously served as an expert -- primarily involving trademark and licensing disputes -- creates a picture of a person with paramount knowledge of product design, brand development, marketing, and material sourcing in the apparel industry. But none of those experiences is relevant to the *de facto* merger issue now before this court.

Marino's recent positions in the apparel industry confirm that conclusion. Most recently, Marino served as Executive Vice President for Gloria Jeans overseeing "merchandising, marketing, sourcing, manufacturing and product development." (Marino Report at 2.) Before that, Marino was Senior Vice President of Hanes Branded apparel responsible for "international operations . . . and development and launch of an active wear brand." (Id.) Marino was also Senior Vice President at Sears "responsible for the design and development of all Sears' Private Brand programs" as well as the President and CEO of a "leading international marketing design and product development buying office." (Id.) While Marino's experience as an executive in the apparel industry is extensive, nothing about it suggests any

9

specialized knowledge in corporate governance or mergers and acquisitions (*de facto* or otherwise), even pertaining to businesses in the apparel industry. And the Report discloses that Marino has not recently published any scholarship, let alone on apparel industry corporate governance. (See Marino Report at 4.)

In rebuttal, H. Daya offers this Court's opinion in Cary Oil Co., Inv. v. MG Refining & Mktg., Inc., for the proposition that Marino's long experience in the apparel industry is sufficient to qualify her as an expert on this issue. (See "Opposition," Dkt. No. 259.) Cary Oil is distinct. There, the expert, Jeffrey Bernard ("Bernard"), was offered specifically "with regard to fuel storage alternatives" in a contract dispute regarding "the storage capacity to take delivery of massive quantities of [petroleum] fuel." No. 99 Civ. 1725, 2003 WL 1878246, at *7 (S.D.N.Y. Apr. 11, 2003) (Marrero, J.). Bernard's background as a "fuel marketer and sales and distribution specialist for Mobil Oil Corporation" gave him the requisite "specialized knowledge" about "fuel delivery," i.e., the specific issue for which he was offered. Id.

The issue of *de facto* merger here is more like the other issue raised in Cary Oil, corporate veil piercing, where the qualified expert was "a professor of law at one of the

nation's most esteemed law schools who t[aught] exclusively on matters involving corporations and who ha[d] lectured and published extensively on matters of corporate governance." Id. at *6. Marino's expertise is unlike that of the professor of corporate governance in Cary Oil and thus is of no particular relevance to the issue here.

Further, Marino's apparel industry expertise is not required to reach the conclusions for which H. Daya proffers her testimony. As the Marino Report explains, she assessed Defendants' "debts, income, financing, purchase orders, vendor identification, invoices, customers, the use of the 'DO DENIM' trademark, and [] overlapping ownership" of Defendants to reach her conclusions. But nowhere in her Report does she draw on her actual expertise in the apparel industry to reach them. Instead, the Court finds Marino made only "logical deductions based on the set of assumptions that [H. Daya] directed [her] to employ" based on the set of facts available to her. R.F.M.A.S., 748 F. Supp. 2d at 269. "Any juror could have employed common sense to perform the same analysis; no background in marketing or experience in the [apparel] industry is necessary." Id. Accordingly, the Court finds that Marino should not be qualified as an expert to opine on the *de facto* merger issue at trial and H. Daya may not offer her or the Report in support of that issue.

11

As noted, Marino may, however, be offered as a lay expert witness to be questioned about the apparel industry and its practices, generally, to the extent such specific information falls within the scope of her personal knowledge and experience.

B.   RELIABLE STANDARDS

Defendants' primary argument is that Marino failed to articulate or apply any apparel industry standard or practice on which she relied in reaching her conclusions. FRE 702 requires that expert testimony be "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702(c), (d); see also Daubert, 509 U.S. at 589 & n.7 (trial court's "gatekeeping responsibility" requires "ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). In the context of scientific methods, Daubert directs trial judges to assess if the methodology "can be (and has been) tested." Daubert, 509 U.S. at 593.[1] Whether expert testimony is reliable also extends beyond the purely scientific "to testimony based on technical and other specialized knowledge." MTX Commc'ns Corp. v.

---

[1] Other considerations used in the context of assessing purely scientific methods include assessing whether the theory has been "subject to peer review and publication," the "known or potential rate of error," or the "general acceptance" of the method within the scientific community. Daubert, 509 U.S. at 593-94.

12

LDDS/WorldCom, Inc., 132 F. Supp. 2d 289, 290-91 (S.D.N.Y. 2001) (citing Brooks v. Outboard Marine Corp., 234 F.3d 89, 91 (2d Cir. 2000)). "For methods or theories that are not purely scientific, the court should follow the same general approach, adapting the Daubert criteria as needed for the purpose of assessing reliability." R.F.M.A.S., 748 F. Supp. 2d at 253 (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)).

The Court is not able to discern any reliable methodology articulated or employed by Marino to reach her conclusions. Although the Marino Report contains a section titled "Standards and Practices in the Apparel Industry," what follows is a general description of the multi-tiered relationship between retail stores and manufacturers, and manufacturers and factories. (See Marino Report at 5-7.) And even if Marino's description of the process for issuing purchase orders and invoices are standardized -- Marino concedes they are only "relatively uniform" (id. at 5) -- it is not clear how the standards are relevant to and being applied (or if they are applicable) to the facts Marino was asked to assess.

For example, Marino expresses conclusions about the "commingling of identities and assets" and how Defendants "commingled their purchase orders" but refers only obliquely

13

to how that fact does or does not fit within any purported industry standard, or even how to apply that standard. And the Court is persuaded that H. Daya's "basic anti-commingling standard" is a common sense business practice more so than a standard particular to the apparel industry. In other words, the Court must trust that what Marino says is true although she provides no way for the Court to test exactly when commingling of assets or invoices represents a set of companies operating as a single company and when it does not. "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 147 (1997).

The Marino Report also fails to rigorously contextualize the facts Marino reviewed within the standards and practices it announces. The Court can find only two instances where the standards Marino announces are applied. First, in the context of vendor identification, the Marino Report recites that "larger retailers like Macy's, Nordstrom and TJ Maxx assign vendor-identification numbers to suppliers" which they "authorize" "to facilitate their ordering and payment process." (Marino Report at 14.) But then the Report concludes that RSC and Vintage "circumvented this clearance process . . . by using Do Denim's vendor-identification

14

number." (Id.) Even here, the Marino Report neither explains why the standard for "larger retailers" applies to RSC and Vintage, nor how to test the conclusion against other facts. Considering the Marino Report's concession that the standards are only "relatively uniform," the Court finds that such standards are not reliable nor helpful to the jury in understanding the facts at issue.

In the other instance, the Marino Report explains that "[i]n the apparel industry different businesses often operate from a single address." (Marino Report at 16.) The Report then concludes the opposite is true for Defendants here, and that operating at a single address is evidence of unified operations. (Id. at 17.) Other than concluding the opposite, the Report does nothing to explain in what instances operating from a single address does or does not indicate a company is operating as a single business unit, making the purported standard difficult to test. Instead, Marino proclaims that she has "appli[ed] the standards of trade and business practice in the apparel industry" to reach her conclusion. (Id. at 18.) On this score as well, Marino's application is conclusory and does not pass muster.

Ultimately, Marino concludes that to a "reasonable degree of business certainty, the four defendants under review operated as a single integrated business company,

15

without effective separation from each other, during the period of 2011-2012." (Id.) H. Daya contends that this conclusion is appropriate because it is couched in "constituent facts underlying claims" while avoiding any conclusions of law. (See Opposition at 13-14.) But while true that the ability of an expert to touch on the ultimate issue of case has been relaxed, see Fed. R. Evid. 704, the Marino Report's failure to apply a reliable standard and contextualize its opinions against the standards it declares veers into the prejudicial; a factual narrative in support of H. Daya's case recited with the veneer of expertise. Such gloss on the facts is far more likely to prejudice and confuse the jury than it is to help them. See Fed. R. Evid. 403, 702. The Court takes steps to avoid the "admission of opinions which would merely tell the jury what result to reach," and grants the motion to exclude the Report and Marino's testimony about its conclusions. Fed. R. Evid. 704 and advisory committee notes on proposed rule.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants R. Siskind & Company, Inc., Vintage Apparel Group, LLC, and Richard Siskind to exclude from trial the expert report and testimony of Nancy Marino ("Marino") (Dkt. No. 250) is **GRANTED,** in part,

and **DENIED,** in part. The testimony and expert report of Marino is excluded. Plaintiff H. Daya International Co., Ltd. may question Marino only generally about her relevant knowledge and experience relating to the apparel industry and its practices that fall within the scope of her personal knowledge and business experience.

The Clerk of Court is respectfully directed to terminate the Motion at Dkt. No 250 as resolved.

**SO ORDERED.**

Dated:   31 January 2023
         New York, New York

_____
                                Victor Marrero
                                U.S.D.J.